# IN THE COURT OF APPEALS OF IOWA

No. 21-1942
Filed March 30, 2022

**IN THE INTEREST OF L.C.,**
**Minor Child,**

**D.H., Mother,**
　　Appellant.
_____

Appeal from the Iowa District Court for Union County, Monty W. Franklin, District Associate Judge.

A mother appeals the termination of her parental rights to a child. **AFFIRMED.**

Shireen L. Carter of Shireen Carter Law Office, PLC, Norwalk, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Meggen Weeks, Afton, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**VAITHESWARAN, Judge.**

A mother appeals the termination of her parental rights to a child born in 2014.[1]  She does not challenge the grounds for termination cited by the district court.  She simply contends termination "was not in the child's best interests."  *See* Iowa Code § 232.116(2); *In re L.B.*, 2022 WL 495312, at *1, ___ N.W.2d ___, ___ (Iowa 2022) ("The paramount concern in a termination proceeding is the child's best interests.").

The mother was involved with welfare agencies in two States.  Initially, the State of Nebraska ordered the child removed from her custody based on her methamphetamine use and "severe" domestic violence episodes.  The child remained out of her mother's care for approximately two and a half years.

The State of Iowa filed a child-in-need-of-assistance petition in 2019, citing the mother's admission to methamphetamine use and the child's "observations of drug use by her parents."  The mother had already agreed to removal of the child from her custody.  She also stipulated to the child's adjudication as a child in need of assistance.

The mother entered a residential substance-abuse treatment program, but the department of human services reported she left "treatment unsuccessfully" after just twenty days "due to her aggressive behaviors."  She subsequently went "in and out of outpatient treatment."

---

[1] The juvenile court terminated the father's parental rights in response to an earlier termination petition.  The court of appeals affirmed the order.  *See In re L.C.*, No. 21-0891, 2021 WL 3660871, at *3 (Iowa Ct. App. Aug. 18, 2021).

Eventually, the mother entered another inpatient treatment program and was "successfully discharged" from that program. She followed up with extended outpatient treatment. The department employee assigned to the case testified the mother was "headed in [the] direction" of reunification. Indeed, the department reported she was "doing excellent" and "multiple providers [were] contacting the department to ask that [she] be allowed another chance." Given these encouraging developments, the department advocated for "more time" to facilitate reunification with the child. But the department cautioned the mother, "[o]ne little thing could end it because this has gone on so long, and we have seen this pattern of kind of sobriety and then using again, sobriety, using again." The district court approved the request for more time.

The department afforded the mother semi-supervised visits with her child. Then, in preparation for a transition to overnight visits, the department administered a sweat patch test. That test was positive for methamphetamine. The department renewed its request for termination of parental rights, reasoning:

> It is clear that [the mother] care[s] deeply for [the child], however it is concerning that [the mother] seems to be participating in a pattern that has been established early in this case and in their Nebraska case. [The mother] has a stable home, a stable job, and a newly established support system within her church. [The mother] was believed to be sober, however the positive drug screen is extremely concerning considering [the mother's] substance abuse history and the length of this case.

A department supervisor testified, "the positive drug screen, . . . that was kind of the straw that broke the camel's back." The department noted that the child had "been in foster care for 28 months in Iowa and just as long in Nebraska," resulting in "more than half of her seven years of life in and out of home placement."

The district court agreed.  The court stated:

> For eighteen months after [the child] was removed, [the mother] ignored her parental responsibilities and obligations to [the child] and only when the threat of termination of her parental rights was imminent did she take those responsibilities and obligations seriously.  And after termination of her parental rights was taken off the table by dismissal of the termination Petition concerning her, [the mother] once again tested positive for the use of methamphetamine.  This is exactly what transpired following [the child's] removal in Nebraska.  It is time to end this pattern and eliminate the stress, emotional harm, drama, and trauma from [the child's] life and give her the opportunity to be a child without these damaging concerns.  [The child's] need for safety, certainty, structure, consistency, stability, and permanency far outweighs any potential negative effects that might be caused by termination of [the mother's] parental rights.

On appeal, the mother "acknowledges that her progress in this case has been inconsistent."  Nonetheless, she suggests her improved circumstances militate in favor of giving her another chance.  She dismisses the positive sweat patch test as "unreliable in the circumstances of this case specifically due to [her] work environment and employment conditions," and she asserts she was otherwise "able, safe, and appropriate to have [the child] returned to her care on the day of the termination proceedings."

The district court rejected the argument that the mother's exposure to paint and chemicals at work could have resulted in a positive drug test.  The court reasoned:

> [I]f a sweat patch has been exposed to outside contamination, it may show positive for methamphetamine but not amphetamine, and the only way a sweat patch test result will show positive for both methamphetamine and amphetamine is if the person has had methamphetamine in their body which has been metabolized or broken down to produce amphetamine.  Therefore [the mother's] explanation for the positive test is not credible and she had to have used methamphetamine for the result of sweat patch test to be positive for methamphetamine and for amphetamine.

The court's findings are supported by the testimony of the department supervisor, who stated, "In speaking with a doctor who does the screening . . . [,] some sort of contaminant would only show a presence of methamphetamine and not amphetamine. A person or individual would have had to have metabolized that methamphetamine to show the presence of amphetamine."

On our de novo review, we agree with the district court that the child's safety would have been compromised had the child been returned to her mother's custody. In other words, termination was in the child's best interests.

**AFFIRMED.**